**WO**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Veronica Martinez, | No. CV-25-00909-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Veronica Martinez ("Plaintiff") seeks this Court's review of the Social Security Administration ("SSA") Commissioner's (the "Commissioner") denial of her application for disability insurance benefits. (Doc. 9). The matter is fully briefed. (Docs. 10, 11).[1] Having reviewed the briefs and the Administrative Record (Docs. 8-1–8-55, "AR.") and for the reasons set out below, the Court affirms the ALJ's decision.

### I.     Procedural Background

On May 4, 2018, Plaintiff filed an application for disability insurance benefits, alleging a disability onset of June 15, 2015. (AR. 2364). Plaintiff's claim was first denied on September 18, 2018, then again upon reconsideration on September 26, 2019. (*Id.*) After these denials, Plaintiff filed a request for a hearing, which was granted, and a telephonic hearing was held before the ALJ on April 28, 2021. (*Id.*) The ALJ issued his decision, determining that Plaintiff was not disabled on July 2, 2021. (*Id.*) The Appeals Council denied Plaintiff's request for review on May 23, 2022. (*Id.*) This denial prompted

---

[1] Plaintiff's Reply brief was filed with tracked changes still visible. (*See* Doc. 11). In the future, Plaintiff should exercise greater care in submitting filings to the Court.

Plaintiff to file a complaint with the District Court, but Plaintiff and the Commissioner then stipulated to remand the case for further proceedings. (*Id.*) The Court accordingly entered a judgment remanding Plaintiff's case. (*Id.*)

Based on the prior District Court Order, the Appeals Council instructed the ALJ to:

- Give further consideration to the medical source opinions and prior administrative medical findings pursuant to the provisions of 20 CFR 404.1520c.

- Further evaluate the claimant's alleged symptoms and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms.

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations.

- Give further consideration to whether the claimant has past relevant work and, if so, can perform it.

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.

(*Id.* at 2365; *see also id.* at 2490–92).

With the Appeals Council's instructions, the ALJ conducted a subsequent hearing with Plaintiff on November 19, 2024. (*Id.* at 2364). The ALJ issued his decision on February 24, 2025, again determining that Plaintiff was not disabled. (*See id.* at 2364–78).[2] Following this decision, Plaintiff filed the present action, seeking Court review, on March 19, 2025. (*See* Doc. 1).

**II.    The ALJ's Decision**

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). First, the ALJ determines whether

---

[2] As the ALJ noted in his decision, Plaintiff had a prior unfavorable disability determination issued on February 4, 2014. The ALJ stated that, although a presumption of continuing nondisability applies, the presumption was rebutted by new and material evidence. (*Id.* at 2365). Therefore, the findings concerning the Plaintiff's vocational profile and RFC from the 2014 decision were not adopted in the February 24, 2025 decision. (*Id.*)

the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth step, where they determine whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines no such work is available, then the claimant is disabled. *Id.*

Here, the ALJ first found that Plaintiff had not engaged in substantial gainful activity during the period from her onset date of June 15, 2015, through her date last insured of June 15, 2018. (AR. 2368). Second, the ALJ determined that Plaintiff suffered from severe impairments in the form of lumbar degenerative disc disease status post fusion, diabetes mellitus, polyneuropathy, cubital tunnel syndrome, and obesity. (*Id.*) And at the third step, the ALJ concluded that Plaintiff does not have an impairment or a combination of impairments that met or medically equaled an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (*Id.* at 2369).

At step four, the ALJ found that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except: The claimant could lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant could stand and walk for six hours in an eight-hour day, and sit for six hours in an eight hour day. The claimant could frequently balance and stoop and occasionally climb, kneel, crouch and crawl. The claimant could frequently reach, handle and finger with both upper extremities. The claimant could not perform work with concentrated exposure to extreme cold, vibration

and hazards." (*Id.*)  Plaintiff was found to have no past relevant work within five years of the date last insured.  (*Id.* at 2377).  Fifth and finally, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (*Id.*)  As a result, the ALJ found that Plaintiff was not disabled from the alleged onset through the date last insured.  (*Id.* at 2378).

## II.      Standard of Review

In considering whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*

To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence."  *Orn*, 495 F.3d at 630.  The ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  The ALJ is responsible for resolving conflicts, addressing ambiguity, and determining credibility.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Id.* at 954 (citations omitted).

## III.     Discussion

Plaintiff contends that the ALJ erred in rendering its decision for two reasons.  First,

Plaintiff argues that the ALJ improperly rejected certain medical opinions. Second, Plaintiff claims that the ALJ improperly discounted Plaintiff's symptom testimony. The Court will address each of Plaintiff's arguments in turn.

### A.    Medical Opinions

Plaintiff contends that the ALJ did not properly consider the medical opinions of Dr. Charles W. Sternbergh, Dr. Mark P. Garrett, and Dr. C. Hutchinson. (Doc. 9 at 4–8). Specifically, Plaintiff contends that the ALJ did not discuss supportability and consistency and failed to back his opinions with substantial evidence. (*See id.*). The Commissioner disagrees, arguing that the ALJ reasonably concluded that the medical opinions were not consistent with or supported by evidence from the relevant time period. (*See* Doc. 10 at 5–10).

An ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source" and "explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(b)). The SSA regulations provide that the most important factors to consider when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a). Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.' " *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

*Woods* makes clear that to properly reject a medical opinion under the substantial evidence standard, the ALJ "must articulate how persuasive it finds all the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* (quoting 20 C.F.R. §

404.1520c(b)).

### 1.      Dr. Sternbergh

Plaintiff, first, argues that the ALJ failed to give reasons based on supportability and consistency for his rejection of Dr. Sternbergh's opinion.   (Doc. 9 at 5–7).   The Commissioner maintains that the ALJ reasonably discredited Dr. Sternbergh's opinion, based on its supportability and consistency.   (Doc. 10 at 5–7).   Dr. Sternbergh was a neurosurgeon at Plaintiff's disability insurance carrier, and, in review of Dr. Sternbergh's opinion, the ALJ stated:

> The undersigned considered the opinion of neurosurgeon, Charles W. Sternbergh, M.D. (Ex. B7F/71). On February 27, 2013, Dr. Sternbergh, opined the claimant could sustain full-time sedentary physical demand work activities including lifting 10 pounds occasionally. He opined she needs to reposition every 60 minutes. He further opined these restrictions and limitations would be valid from November 1, 2012 "going forward." Dr. Sternbergh's opinion is not persuasive. His opinion is not supported by his treatment notes which show the claimant's right lower extremity neuropathy began to resolve with small dosed [sic] of medication following the lumbar fusion. Further, his opinion is inconsistent with the evidence as a whole which shows she was able to ambulate normally with some mild strength reduction in the lower extremities, mild decrease of lumbar movement and no indication of tenderness or pain with movement, normal joint range of motion, and normal gait and station during the period at issue (Exs. B6F; B7F/35, 37, 52; B8F/2).

(AR. 2375).

Based on the above assessment, the Court concludes that there is substantial evidence to support the ALJ's decision to disregard Dr. Sternbergh's opinions.  To start, the ALJ reasonably found that Dr. Sternbergh's opinion was unpersuasive because it was not supported by his own treatment notes.  (*Id.*)  Indeed, Dr. Sternbergh's notes state that "motor and sensory abnormalities" and "electrodiagnostic abnormalities" in the lower right extremity had "resolved," "[n]eurological abnormalities" in the lower right extremity "began to resolve," and the back and leg pain that resurfaced was treated with "tramadol used in small doses."  (*Id.* at 614); *see Thomas*, 278 F.3d at 957 (upholding the ALJ's rejection of doctor's opinion because it was not supported by doctor's treatment notes).

The ALJ also found Dr. Sternbergh's opinion inconsistent with the record evidence that showed Plaintiff was able to ambulate normally, had a normal gait, and experienced mild decreases of lower extremity strength and lumbar movement. (AR at 2375). In noting this inconsistency, the ALJ cited to evidence demonstrating normal function or only mild abnormalities. (*See id.*); *see Kitchen v. Kijakazi*, 82 F.4th 732, 739–40 (9th Cir. 2023) (noting that an ALJ can rely on consistency with other medical sources in assessing a medical opinion). "In assessing a medical opinion, an ALJ need only explain her consideration of the factors of supportability and consistency, which the ALJ did here[.]" *Connolly v. Kijakazi*, 2022 WL 17484335, \*1 (9th Cir. 2022). Thus, the ALJ properly considered supportability and consistency in rejecting Dr. Sternbergh's opinion.

### 2. Dr. Garrett

Plaintiff next contends that the opinion of Dr. Garrett was not properly considered. (Doc. 9 at 7–8). At the same time, the Commissioner claims that the ALJ reasonably found his opinion unpersuasive as it was rendered three years after Plaintiff's date last insured ("DLI"). (Doc. 10 at 7–9). Dr. Garrett treated Plaintiff in March of 2021, due to Plaintiff's right leg pain and numbness. (AR. 2352). His opinion was submitted to the ALJ, and the ALJ's discussion of the opinion reads as follows:

> The undersigned considered the opinion of Mark P Garrett, M.D... On March 25, 2021, Dr. Garrett opined the claimant was to avoid any bending or twisting and could not lift more than 10 to 15 pounds…. These opinions are not persuasive. Their opinions are supported by their examinations of the claimant. However, these opinions are inconsistent with the evidence of record from 2015 through 2018 an [sic] colored by the fact that they were written more than three years after the date last insured.

(AR. 2376).

Here, the relevant time period for Plaintiff's disability determination was between 2015 and 2018. Plaintiff does not argue—and nor does the record show—that Dr. Garrett treated or evaluated Plaintiff prior to 2021. *Ciccarelli v. Comm'r of Soc. Sec. Admin.*, 164 F.3d 629, \*1 (9th Cir. 1998) ("A claimant seeking disability insurance benefits under Title II of the Act must show that he became disabled during the period in which the special

insured status requirements were met."). The opinion was rendered based on Plaintiff's state in 2021, and Dr. Garrett did not provide any opinions concerning past limitations. (*See id.* at 2352–65); *C.f. Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228 (9th Cir. 2011) (determining that the ALJ erred by failing to consider a doctor's opinion that post-dated the ALJ's decision because the opinion concerned the claimant's limitations during the relevant period). Therefore, the ALJ appropriately accorded less weight to a medical opinion given three years after Plaintiff's DLI. *See, e.g.*, *Santos v. Comm'r of Soc. Sec. Admin.*, 2020 WL 3542178, *2 n.2 (D. Ariz. 2020) ("The ALJ correctly rejected this opinion because it was based on a single examination after Plaintiff's DLI. Though an ALJ is required to consider a medical opinion offered after a claimant's DLI, the ALJ may discount the opinion because it is based on evidence outside the relevant period.").

Moreover, "the ALJ's finding that the symptoms noted in [Dr. Garrett's] opinion are not supported by the medical record for the relevant period constitutes a specific and legitimate reason to discount his opinion[.]" *Alvarez v. Comm'r of Soc. Sec.*, 2022 WL 3108619, *9 (E.D. Cal. 2022). While the ALJ's discussion was cursory, the Court does not find that the ALJ erred in its assessment of Dr. Garrett's opinion. *See Lombardo v. Schweiker*, 749 F.2d 565, 567 (9th Cir. 1984) (concluding that the ALJ properly disregarded opinion of treating physician who examined claimant a year and a half after the relevant period).

### 3.    Dr. Hutchinson

Plaintiff succinctly argues that, although the ALJ found Dr. Hutchinson's opinion mostly persuasive, the ALJ failed to accurately apply the limitation against hazardous machinery. (Doc. 9 at 8). Plaintiff claims that the "routing clerk" job identified as within Plaintiff's capabilities requires the use of machinery. (*Id.*) However, as the Commissioner notes, the Dictionary of Occupational Titles ("DOT") states that moving mechanical parts are "not present" in this occupation. (Doc. 10 at 10 (citing DOT 222.678-022)). Not to mention, the other step-five occupations of mail router and sorter are not challenged by Plaintiff and account for a significant number of national jobs. (*See* AR. 2378).

Consequently, the Court finds that Plaintiff has failed to establish any prejudicial error with the ALJ's application of Dr. Hutchinson's opinion.

### B.       Plaintiff's Subjective Symptom Testimony

Plaintiff next argues that the ALJ erred in his rejection of Plaintiff's subjective symptom testimony as he relied on his own opinion or misstated Plaintiff's testimony. (Doc. 9 at 10–12). Plaintiff also argues that she was not informed of her correct DLI and therefore not meaningfully able to participate in her hearing. (*Id.* at 12–13). The Court disagrees.

An ALJ must perform a two-step analysis when determining whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). First, the ALJ must determine whether Plaintiff presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Garrison*, 759 F.3d at 1014. "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.' " *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, if there is no evidence of malingering, the ALJ may reject the Plaintiff's symptom testimony only by giving specific, clear, and convincing reasons. *Id*. at 1015; *Brown-Hunter*, 806 F.3d at 488–89.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings regarding the Plaintiff's credibility are insufficient. *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d

597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). For instance, the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040).

Additionally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Albeit an ALJ may not "effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 495 (9th Cir. 2022).

Here, the ALJ summarized Plaintiff's testimony as follows:

In a Disability Report, the claimant alleged disability due to back pain, a herniated disc, hypertension and diabetes (Ex. B3E). At the hearing, she testified that she had surgery on her back in 2011 and continues to have lower back pain since the procedure. She alleged nerve pain secondary to nerve damage. The pain is in her shoulders, arms, neck, fingers, toes, legs and lower back. It occurs twenty-four hours per day, seven days per week. She testified that she had surgery on her back in February 2024. She stated that she continues to have pain in her back despite the surgery. She alleges difficulty with standing and walking due to balance issues and pain. She testified that her pain makes it difficult to sit. She alleges difficulty breathing but noted she has no respiratory illnesses. She testified that her pain increases her blood pressure and blood sugar levels. She stated that she needs assistance from her daughter and husband with daily activities including showering, getting dressed and meal preparation.

(AR. 2369–70).

The ALJ determined that, while Plaintiff's medically determinable impairments could be reasonably expected to cause "some of the alleged symptoms," Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 2370).

To support this conclusion, amongst other things, the ALJ discussed various MRI

scans Plaintiff underwent and concluded that, while "the foregoing objective reports are consistent with some abnormality of the claimant's lumbar spine, there is no evidence of any nerve root impingement, severe stenosis, progressive neurologic deficits, infections, tumors, or fractures to cause the severity of pain and limitations alleged prior to the date last insured." (*Id.*) The ALJ noted that, during the relevant period, clinical findings were minimal and physical examinations revealed normal functioning or mild impairments. (*Id.*) The ALJ considered Plaintiff's "complaints of numbness, difficulty standing, walking, bending and balance, weakness in her hands and her need for frequent rest" and found they were not supported by the objective treatment recording. (*Id.* at 2371). The ALJ found Plaintiff's lack of treatment between 2015 to December 2017 notable, concluding that the infrequent, conservative treatment inconsistent with Plaintiff's allegations of disabling plain. (*Id.*)

Furthermore, the ALJ determined that Plaintiff's daily activities were not limited to the extent that would be expected given Plaintiff's testimony. (*Id.* at 2372). The ALJ took note of Plaintiff's ability to do laundry, wash dishes, clean up around the house, and go to the grocery store by herself. (*Id.* at 2372–73). In addition, he noted that Plaintiff was able to spend time and play games with her grandchildren. Moreover, "[d]uring the 2019 consultative examination she denied significant impact on activities of daily living." (*Id.* at 2373). The ALJ ultimately decided that the physical capabilities required to perform the above tasks contradicted Plaintiff's allegations. (*Id.*)

From the above, the Court finds that the reasons the ALJ used to find that Plaintiff's testimony was not "entirely consistent" with other evidence in the record are specific, clear, and convincing, therefore, the ALJ's decision is supported by substantial evidence. *Molina*, 674 F.3d at 1112. While Plaintiff is correct that ALJ's should not "play doctor" in their assessments, here the ALJ relied on more than just his understanding of Plaintiff's condition as his discussion included references to objective medical evidence, Plaintiff's lack of treatment, and daily activities. *See Bifarella v. Colvin*, 51 F. Supp. 3d 926, 934 (E.D. Cal. 2014) ("Plaintiff's failure to seek treatment for an alleged impairment was a

valid consideration in assessing plaintiff's testimony."); *Burch*, 400 F.3d at 681 (affirming the ALJ's discrediting of the plaintiff's symptom testimony based on daily activities of personal care, cooking cleaning, and shopping; MRIs that showed "only mild degenerative disc disease" and no apparent root impingement; and the plaintiff's lack of consistent treatment). In all, the ALJ identified the testimony it found not to be credible and explained what evidence undermines the testimony, as required by the Ninth Circuit. *See Holohan*, 246 F.3d at 1208.

Finally, Plaintiff briefly contends that she was not afforded a full and fair hearing, but the Court finds the Commissioner's arguments to the contrary persuasive. Plaintiff asserts that the ALJ criticized her testimony for relating to a time period after her DLI, but Plaintiff was never informed of her DLI. (Doc. 9 at 12). Plaintiff also argues that she was not given the opportunity to request a supplemental hearing and that she was denied a meaningful opportunity to participate in her hearing as the relevant time period was not clear. (*Id.* at 12–13). However, the Commissioner notes that Plaintiff was represented by an attorney at her first hearing in 2021, who confirmed with the ALJ that Plaintiff's DLI was in June 2018 and questioned Plaintiff about her impairment progression since June 2015. (Doc. 10 at 15). Additionally, Plaintiff never requested a supplemental hearing or any opportunity to further develop the record. (*Id.*) Plaintiff claims that she was "not given the opportunity to request a supplemental hearing" but does not explain how she was denied this opportunity. The record does not reflect any attempt to make such a request. Plaintiff must actually raise an issue with the ALJ for it to be determined that she was improperly denied her requested relief. The record also does not show nor does Plaintiff argue that the ALJ's duty to further develop the record was triggered. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.' "). Based on the record before the Court, Plaintiff's due process rights were not violated.

Accordingly,

**IT IS ORDERED** that Administrative Law Judge's February 24, 2025 decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment accordingly and terminate this action.

Dated this 24th day of March, 2026.

_____
Honorable Diane J. Humetewa
United States District Judge